IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| CITY OF MILWAUKIE,<br><br>        Plaintiff,<br><br>   vs.<br><br>NORTHLAND CASUALTY COMPANY,<br>a Minnesota corporation,<br><br>        Defendant. | Case No. CV09-564-HU<br>OPINION AND ORDER |

Charles E. Corrigan
Law Office of Charles E. Corrigan
1000 S.W. Broadway, Suite 2130
Portland, Oregon 97205
    Attorney for plaintiff

Margaret M. Van Valkenburg
Erin S. Nelson
Bullivant Houser Bailey
888 S.W. Fifth Avenue. Suite 300
Portland, Oregon 97204
    Attorneys for defendant

HUBEL, Magistrate Judge:

    This case is before the court on cross motions for summary judgment. Plaintiff City of Milwaukie (the City) seeks the costs of defending the case brought against it in <u>Emmert International v.</u>

OPINION AND ORDER Page 1

City of Milwaukie, CV 05-514-HU, from Northland Casualty Company (Northland), its insurer at the relvant time period. The City also seeks its attorney fees in prosecuting this action under ORS 742.061.

Northland contends there is no coverage extended to the City under its policy of insurance (the Northland policy) for the Emmert complaint, and if there were any, it is excluded by applicable provisions of the Northland Policy. In a case such as this, the insured, the City, has the burden to establish that there is coverage, Employers Ins. of Wausau v. Tektronix, 211 Or. App. 485, 509, 156 P.3d 105 (2007), and the insurer has the burden to establish the applicability of any exclusions within its policy it contends eliminate any duty to defend the underlying lawsuit. Id.

## The Emmert Complaint

The Emmert complaint alleges three claims following six paragraphs of common factual allegations. Those common factual allegations include:

> Emmert communicated to the City its displeasure with the City's inflexibility, and informed the City that Emmert believed the City's intransigence was unreasonable, illegal, and personal to Emmert and its owner, Terry Emmert.

Complaint ¶ 7, Northland Concise Statement of Fact (CSF), Exhibit A and:

> ... despite the fact that the proposals Emmert made to the City qualified outright for the necessary permits to relocate the structure, the City failed and refused to grant the necessary permits unless and until Emmert agreed to waive any and all claims he might have against the City for the City's actions relating to its previous denials of permits, waivers, and the entire subject matter of the structure.

OPINION AND ORDER Page 2

1  Id. at ¶ 11.

2  The first claim then goes on to allege a deprivation of a
3  constitutionally protected property interest against the City for
4  refusing to issue the necessary permits to move the structure. The
5  City characterizes this claim as really multiple claims couched as
6  one (procedural and/or substantive due process claims for example).

7  The second claim alleges the unconstitutional exaction of a
8  protected liberty interest in the demand of the waiver of the right
9  to sue for any past actions by the City before the permits would be
10 issued. The third claim alleges an equal protection claim for
11 failure to issue the permits when others similarly situated were
12 issued permits. None of the claims alleges whether the actions
13 attributed to the City were with the intent to harm Emmert, or were
14 done recklessly or negligently in the face of the foreseeable harm
15 to Emmert, and in that sense may be interpreted as alleging
16 liability based on any of these degrees of culpability.

### The Northland Policy

The following language appears in the Northland policy.

**INSURING AGREEMENT**

> We will pay those sums that the insured becomes legally
> obligated to pay as "damages" because of:
> ***
> 2. Any negligent act, error or omission: or
> 3. "Personal injury," "advertising injury" or violation
> of civil rights which is caused by an offense,
>
> arising out of an "occurrence" which takes place during
> the policy period and to which this insurance applies.

Northland CSF Exhibit A, p. 12.

///

OPINION AND ORDER Page 3

**DEFINITIONS**

* * *

2.  "Advertising injury" means injury arising solely out of one or more of the following offenses, committed in the course of advertising your goods, products or services:

    a.  Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services;

    b.  Oral or written publication of material that violates a person's right of privacy;

    c.  Misappropriation of advertising ideas or style of doing business; or

    d.  Infringement of copyrighted advertising materials, titles, or slogans.

* * *

4.  "Bodily injury" means bodily injury, sickness, or disease sustained by a person, including death resulting from any of these at any time.

* * *

12. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

* * *

14. "Personal injury" means injury, other than "bodily injury," arising out of one or more of the following offenses:

    a.  False arrest, detention, or imprisonment;

    b.  Malicious prosecution;

    c.  The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling, or premises that a person occupies by or on behalf of its owner, landlord, or lessor;

///
///

OPINION AND ORDER Page 4

        d.    Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services;

        e.    Oral or written publication of material that violates a person's right of privacy; or

        f.    False or improper service or process.

**EXCLUSIONS**

\* \* \*

3.    Condemnation

        Claims for loss or "damage" or any liability of any and all insureds arising out of or in any way connected with the application of the principle of eminent domain, condemnation, inverse condemnation by whatever name called regardless of whether such claims are made directly against the insured or by virtue of any agreement entered into by or on behalf of the insured. This exclusion also includes but is not limited to, any action or suit for an alleged taking of or "damage" to real or personal property based upon: an alleged violation of Article I Section 18 of the Oregon Constitution; Article XI, Section 4 of the Oregon Constitution; and any action or suit for an alleged taking of or "damage" to real or personal property based upon an alleged violation of any federal or state law and any provision or amendment of the Constitution of the United States, including but not limited to the Fifth and Fourteenth Amendments to the United States Constitution, whether such action is brought pursuant to 42 U.S.C. § 1983 or some other provision of state or federal law. This exclusion applies to all the coverages set forth in this policy of insurance, whether such coverage is provided in the insuring agreement or by an endorsement.

\* \* \*

5.    Expected or Intended Damage or Injury

///
///
///

OPINION AND ORDER Page 5

>     Any "damages" expected or intended from the
>     standpoint of an insured....

\* \* \*

### The Northland Policy grants coverage for at least one claim in the <u>Emmert</u> complaint

The City contends that the Northland Policy provides coverage for the defense of the <u>Emmert</u> complaint flowing from the third grant of coverage, in the "violation of civil rights" language. Northland contends that there is no "occurrence" alleged in the <u>Emmert</u> complaint, as there is nothing alleged to be an accident there. Northland also argues for two exclusions that will be discussed below.

The third grant of coverage encompasses personal injury, advertising injury, or a violation of civil rights, each of which must be caused by an offense that arises out of an occurrence. Personal injury is defined in the policy and includes injury other than bodily injury arising out of one or more of a list of enumerated offenses, all of which are torts. Advertising injury is defined in the policy as an injury (unqualified) that arises solely out of one or more of a list of specific offenses, all of which are torts. While the list of torts has common listings for both personal injury and advertising injury, they are not co-extensive. Civil rights violations is a term that is not defined in the policy.

The language "caused by an offense" of the third coverage grant, suggests that it is not all personal injuries, advertising injuries, or civil rights violations which are covered. The policy

OPINION AND ORDER Page 6

definition of personal and advertising injuries suggest the limitation on types of offense that are intended for each of them are to specific enumerated torts, all of which require an intent to harm. The absence of any such limitation in the policy for civil rights violations suggests that some broader classification of offenses intended for civil rights violations. The text and context suggest that it would be any tort offense. But this can include intentional torts, negligence, and other torts such as trespass which can be based on either negligent or intentional conduct. See Ferguson v. Birmingham Fire Insurance Co., 254 Or. 496, 460 P.2d 342 (1969); Abrams v. General Star Indemnity Company, 335 Or. 392, 400, 67 P.3d 931 (2003). The Oregon Supreme Court suggested that Ferguson and Ledford v. Gutoski, 319 Or. 397, 877 P.2d 80 (1994) lead to:

> the following approach for answering any duty-to-defend question when the complaint contains allegations of conduct that are excluded under the insurance policy. First, the court must determine whether the complaint contains allegations of *covered* conduct. If it does, as the trespass complaint did in Ferguson, then the insurer has a duty to defend, even if the complaint also includes allegations of excluded conduct. If the complaint does not contain allegations of covered conduct, as was the case with the malicious prosecution complaint before the court in Ledford, then the insurer has no duty to defend.

Abrams, 335 Or. at 400.

Neither personal injury nor advertising injury is alleged in the Emmert complaint. Violations of civil rights are alleged. However, to be covered, the civil rights violations must arise out of an occurrence, which is an accident, according to the policy. CSF, Exhibit A, p. 14.

OPINION AND ORDER Page 7

In the context of an insurance policy, there have been many cases addressing the meaning of an accident. The critical piece to examine is the standard of care/fault/culpability necessary to support a verdict against the City on the claims alleged in the Emmert complaint. Unlike the complaint in Abrams, the Emmert complaint does not allege a subjective intent to harm by the City or its employees. It alleges acts (denial of permits and demand for a release) that were intentional, and it alleges Emmert's belief that the City's actions were "personal to Emmert and its owner, Terry Emmert." The conduct of the City employees could have been intentional in the sense of (1) intended to harm Emmert, or (2) intended without concern for what harm might ensue. Alternatively, the employees' conduct could have been (3) negligent with harm reasonably foreseeable, or (4) completely legal (faultless) conduct that had harmful consequences (i.e., if the permit was not one that should be issued for legitimate reasons substantively or procedurally, but had the alleged effect of Emmert losing the building).

Without addressing the first and third claims of the Emmert complaint, the second claim does not require that the City be found to have intended Emmert's loss/harm in order for Emmert to have recovered. In other words, the deprivation of civil rights alleged there need not be based on an act intended to harm. It is not the "act" of denying the permit which carried the potential to be actionable as a constitutional violation; rather, it was the coupling of the requirement for the release with the issuance of

OPINION AND ORDER Page 8

the permits. It was possible under the allegations of the second claim for Emmert to have prevailed if it proved the City, through its employees, negligently required the release before issuing permits, believing it did not deny Emmert a constitutional right of access to the courts. As discussed in the Emmert Opinion and Order of August 30, 2006, a claim of unconstitutional conditions in a settlement context requires an analysis of whether the condition is reasonably tied to a legitimate governmental interest and whether there is a nexus between the governmental interest and the specific right waived. Intent is not an element of the claim.

Recovery on the second claim depended on many things, but it did not require an intentional deprivation of a constitutional right that would not constitute an occurrence. Like the conversion claim in Abrams and the trespass claim in Ferguson, the second claim could have arguably been successful upon proof of conduct that was not intended to harm Emmert.

Also keep in mind that the outcome of the case against the City is completely irrelevant to a determination of the duty to defend. The fact that I determined that no claim was stated or could be stated, at least on the facts as they developed is of no help to Northland on the duty to defend. The court looks only at two documents, the complaint and the insurance policy, and does not determine whether the complaint would have survived litigation and produced a judgment against the insured. See Marleau v. Truck Ins. Exch., 333 Or. 82, 91, 37 P.3d 148 (2001).

///

OPINION AND ORDER Page 9

The question in this situation is not whether the conduct attributed to the insured was intentional, but whether an injury to the victim or others was intended by the insured when the insured acted. As <u>Ferguson</u> and <u>Abrams</u> pointed out, even a complaint alleging a single cause of action based on intentionally caused injury may give rise to a duty to defend if, without amendment, the facts alleged would support liability for conduct covered by the policy. <u>Ferguson</u> 254 Or. at 507, <u>Abrams</u>, 335 Or. at 399. Thus the City's burden to establish allegations within the grant of coverage in the <u>Emmert</u> complaint is satisfied. This also disposes of the arguments by Northland that the <u>Emmert</u> allegations did not allege an occurrence.

**Exclusions do not apply to eliminate a duty to defend**

Turning to the exclusions raised by Northland, the discussion above regarding an occurrence applies equally to the exclusion for expected or intended harm. The allegations of the <u>Emmert</u> complaint and this record on summary judgment do not support the application of the expected or intended harm exclusion to all possible outcomes of the Emmert complaint and therefore the duty to defend is not eliminated by that exclusion.

Northland asserts that even if the complaint could be interpreted as alleging a civil rights violation caused by an offense arising out of an "occurrence," there is no coverage because of the condemnation exclusion.

The condemnation exclusion deals with liability "arising out of or in any way connected with" application of the "principle of

OPINION AND ORDER Page 10

eminent domain, condemnation, inverse condemnation, by whatever name called." See Policy p. 12, § 5. Although "inverse condemnation" is not defined in the policy, the Oregon Supreme Court has held:

> An inverse condemnation occurs when a governmental entity effectively takes property without actually exercising its power of eminent domain. ... [T]his court has defined inverse condemnation this way:
>
>> Inverse condemnation is the name given to a cause of action against a governmental agency to recover the value of property which has been taken in fact by the governmental agency, even though there has been no formal exercise of the power of eminent domain. ..." <u>Hawkins v. City of LaGrande</u>, 315 Or. 57, 67, 843 P.2d 400 (1992) ...

<u>State ex rel. Dept. of Transp. v. Hewett Professional Group</u>, 321 Or. 118, 130-32, 895 P.2d 755 (1995).

Northland argues that the complaint essentially asserts a claim for a taking or for damage to real or personal property. The complaint alleges that in refusing to grant Emmert the permits, the City "exacted an unconstitutional deprivation of Emmert's property interest in the permits," thereby depriving Emmert of a "property interest without due process of law;" engaged in "unconstitutional exaction of a constitutionally protected liberty interest," or depriving Emmert of its "protected liberty interest in access to the courts, without due process of law" by conditioning the permits on the waiver of claims; and "denied Emmert permits to which Emmert had a claim of entitlement, on a basis that was arbitrary, capricious, and not consistent with the treatment of other applicants." Northland argues that despite the pleading of claims

OPINION AND ORDER Page 11

as constitutional violations, the complaint is essentially one for taking, based on the City's conduct in declaring the structure a nuisance, denying Emmert permits to move it, and then demolishing it.

The City counters that the condemnation exclusion of the policy is inapplicable, arguing that the first sentence, which excludes claims for "inverse condemnation by whatever name called," does not apply because during the Emmert litigation, the court rejected the City's contention that Emmert's constitutional claims were properly characterized as inverse condemnation claims. Consequently, the City argues, "the court's reasoning shows that the Emmert complaint *could* be interpreted to avoid the inverse condemnation exclusion," and "that is all that is necessary."

I agree. The issue here is not the decision the court made in disposing of the Emmert claims. The possibility that I could have decided Emmert's claims were properly characterized as inverse condemnation claims which would be within the exclusion begs the question. It was the possibility that the Emmert claims would **not** be characterized as inverse condemnation claims which eliminated that exclusion as an avenue for Northland to escape defending the Emmert case.

## Conclusion

The City's motion for summary judgment (doc. # 11) is GRANTED. Northland's motion for summary judgment (doc. # 16) is DENIED. The City's alternative request that the court dismiss Northland's affirmative defenses is DENIED AS MOOT.

OPINION AND ORDER Page 12

IT IS SO ORDERED.

Dated this 27th day of <u>April</u>, 2010.

           <u>/s/  Dennis James Hubel  </u>
             Dennis James Hubel
            United States Magistrate Judge

OPINION AND ORDER Page 13